**Lorenzo THURMOND, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 42200.**

Court of Criminal Appeals of Texas.

July 16, 1969.

Rehearing Denied Oct. 29, 1969.

Saccomanno, Clegg, Martin & Kipple, Houston, for appellant; Charles Kipple, Houston, of counsel.

Carol S. Vance, Dist. Atty., James C. Brough and F. M. Stover, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

BELCHER, Judge.

The offense is robbery; the punishment, eight years.

The testimony of two state's witnesses, Pete Ghiglieri and Cherie Dorothy B. Capsuto, was that three men robbed them by the use of a knife and a pistol, taking their billfolds and the money contained in them. The night following the robbery Ghiglieri and Capsuto, accompanied by an officer, went to the apartment of George and Mary Elliott which was located about two blocks from the scene of the robbery. Capsuto entered an apartment adjoining the Elliotts at the instance of George Elliott who told her that she might recognize some of the men then in the apartment. After viewing the men in the apartment, she identified the appellant as one of the men who had robbed her and Ghiglieri.

While testifying, the appellant admitted that he was in the apartment when Capsuto came, but testified that he did not commit the robbery and was at another and different place at the time of the robbery. The alibi testimony was supported by the testimony of several witnesses.

The sole ground urged as error is that: "The prosecutor's argument concerning Ghiglieri's alleged January 6th conversation with Elliott constitutes obvious harm, unsworn statements of material fact and a denial of appellant's right to confront witnesses under the Texas and Federal constitutions, demanding reversal."

The appellant relies upon the following argument before the jury by state's counsel

and his objections thereto as they were made to support his position:

"What additional do you have? I think this is very, very, important. The rules of ethics don't allow me to bring you testimony of what somebody told somebody else if it's objected to they have a perfect right to do so. I want you to think though about the question I asked the defendant, 'Didn't you know that the night of the robbery that the Elliotts told Mr. Ghiglieri that you had come running into that apartment immediately after the robbery?' The defendant says, 'No, I didn't know that'. I called Mr. Ghiglieri back to the stand and I asked him, 'Did you go to the Elliott apartment that night of the robbery?' 'Yes I did'. 'What time did you get there?' 'I got there about eight (8:00)'. 'Did you talk to Mr. Elliott?' 'Yes I did'. 'Was it in reference to the defendant?' 'Yes it was'. 'Was it in reference to where the defendant had come from?' 'Yes'. 'Was it in reference to what time he got there'? 'Yes.' 'Was it in reference to where he was'?

"Mr. Huebner: Your Honor, this line of questioning was objected to and—

"The Court: Alright, I'll sustain it.

"The last question was objected to but you heard the answers. Now, the defense has the right, and I'm not criticzing counsel, to keep that conversation out, but is there any doubt in your mind but what the conversation occurred and what was said in the conversation? You can draw logically your own deductions as to that."

\*  \*  \*  \*  \*  \*

"Now, I put Mr. Biggs on the stand to prove that we had made a diligent effort to locate the Elliotts. I would like to have had the Elliotts. I think the Elliotts could have told you when the defendant came to their apartment that night. If what they told Mr. Ghiglieri is right, I know they could have.

"Mr. Huebner: I would like to object to Counsel testifying as to what the Elliotts would have said.

"The Court: Yes, let's stay in the record.

"Mr. Stover: I agree, we can't find them. We've tried our dead-level best and we don't know where they are. Don't know whether they're in Houston or Texas or where. But we tried to find them. That's what I wanted to prove up. Nobody's hiding evidence from you, at least, not the State."

The first purported objection to the argument complained of and set out above, which was sustained, did not specify anything in particular and gave no grounds therefor.

The transcript of the testimony of the witness Ghiglieri reflects:

"Q  What time did you arrive at this apartment?

"A  About eight (8:00) o'clock.

"Q  Did you have occasion to talk to Mr. Elliott while you were present at the apartment?

"A  Yes I did.

"Q  Did you have a conversation with Mr. Elliott with reference to the defendant, Lorenzo Thurmond?

"A  Yes I did.

"Q  Did Mr. Elliott state to you what—whether or not the defendant had been in the adjoining apartment that evening?

"Mr. Huebner: Your Honor, I'm going to object to that as hearsay.

"The Court: Sustained.

"Q  Did you have a conversation, I'm not asking what was said, but did you have a conversation with reference to the defendant, Lorenzo Thurmond?

"A Yes I did.

"Q And with reference to where the defendant had been that evening?

"A Yes.

"Q And the time he had been there?

"A Yes.

"Q Where he had been?

"A Yes, that's where he was.

"Q Do you of your own knowledge—

"Mr. Huebner: Now, Your Honor, I'd like to this—

"The Court: Yes, that's sustained.

"Q Do you of your own knowledge know where Mr. Elliott can be found at this time, sir?

"A No, I do not."

Cherie Dorothy B. Capsuto testified in part as follows:

"Q When you went there on January the seventh (7th) did the Elliott's indicate the adjoining apartment to you and tell you there were some people in there?

"A Yes.

"Q Did you have occasion to go into the adjoining room or go to the door and look into the room?

"A Not that night at all.

"Q The night of January the seventh (7th) is the night I'm talking about?

"A Yes.

"Q The day after the robbery?

"A Yes.

"Q When you looked into the room did you see anyone you recognized then?

"A Yes. George and Mary said, 'Will you go in there and look around, there's a group of people in there I think perhaps somebody might be in there that you might recognize'. I walked in, I looked around and I walked out, just that quick, I immediately recognized the gentleman that held me up. I knew no name."

The state waived its opening argument.

The opening argument for the appellant included in part the following:

"Unfortunately or conveniently, the Elliott's disappeared, and these people can't be located so far. They have been subpoenaed, but they are the kind of people, evidently, that can't be put under recognizance. We don't know what their testimony would be if they had been here, or what they would testify to. But how could be know where people would be that are set up in their little apartment and would quit their jobs and leave the country, or would leave and disappear when trial time comes.

\* \* \* \* \* \*

They (complainants) were led or misled into making this original identification by the Elliotts, \* \* \*."

The failure to specify any particular argument or give any grounds therefor upon "objecting" to the argument, or to request the court to instruct the jury not to consider the matters complained of, or to move for a mistrial in light of the record reveals no reversible error. Smith v. State, Tex. Cr.App., 418 S.W.2d 683; Hughes v. State, Tex.Cr.App., 433 S.W.2d 698.

The judgment is affirmed.